UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JUAN CARLOS ESPINOSA, JR.                                                                          PLAINTIFF

V.                                                                                              NO. 3:03CV-00620-MO

UNITED STATES FIDELITY AND GUARANTY COMPANY                               DEFENDANT

**MEMORANDUM OPINION**

The defendant in this insurance coverage action has filed a motion for partial summary judgment, in which it asserts that the amount of coverage available under its policy is limited by the availability of other coverage and by its policy's stated limit of coverage. Having considered both parties' arguments, being otherwise sufficiently well advised, and for the reasons stated below, the court agrees that partial summary judgment should be granted.

**I.**

In 2002, the plaintiff was injured in a single-car accident. Mr. Espinosa was a passenger in the vehicle, which was being operated by Garrett Jones, who apparently crashed the car into a tree. Mr. Jones' insurance carrier, State Farm, tendered its policy limits of $100,000 to Mr. Espinosa, but he alleges that he has suffered damages in excess of that amount.

Mr. Espinosa, a minor at the time of the accident, has underinsured motorists coverage ("UIM coverage") potentially available to him under two policies obtained by his parents. The first policy, issued by Travelers, was obtained by his mother, and specifies UIM coverage in the amount of $50,000. The second policy, issued by USF&G, was issued to his father through his employment, and specifies UIM coverage in the amount of $100,000, but plaintiff asserts that a self-funded retention endorsement increased that amount. Plaintiff has chosen to sue only

USF&G.

The questions presented to the court are three: (1) Which state's law governs the interpretation of each policy? (2) What effect, if any, does the existence of the Travelers policy have on the amount of USF&G's potential liability? (3) What is USF&G's total potential liability? The court will answer each in turn.

## II.

The standard for summary judgment in federal court is well known and well settled. Pursuant to FED. R. CIV. P. 56(c) and the applicable case law, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and construed in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., United States v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 856-7 (6th Cir. 2005). In evaluating a motion for summary judgment, this court must consider the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Verizon North Inc. v. Strand,* 367 F.3d 577, 581 (6th Cir. 2004).

*Choice of Law*

Before the court can resolve the issues presented in defendant's motion for partial summary judgment, it must decide, as a matter of law, which state's law governs the interpretation of each policy. When federal jurisdiction is based on diversity of citizenship, the court must apply the law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 404-5 (6th Cir. 2005). In this matter, that state is Kentucky, and in Kentucky it has long been held that in actions premised on

contract interpretation, the law of the state with the greatest interest in the outcome of the litigation should be applied. *See, e.g., Breeding v. Mass. Indemnity and Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982). This standard mandates that a different state's law apply to the interpretation of the Traveler's contract than it does to the interpretation of the USF&G contract.

Contrary to defendant's bold assertion, it cannot be credibly argued that Kentucky law should be applied when the court interprets the availability and extent of UIM coverage under the Travelers policy. The accident occurred in Indiana and was caused by an Indiana resident. Mr. Espinosa and his parents also are all Indiana residents. Moreover, the policy was issued in Indiana through an Indiana broker. Indeed, with respect to the Travelers policy, there are no Kentucky contacts whatsoever. Indiana law must govern its interpretation.

By contrast, the USF&G policy was policy issued generally to Ford Motor Company, a Michigan corporation. The policy covered Mr. Espinosa solely because his father is an employee at a Ford facility in Kentucky and, as part of his compensation package, leased a company vehicle through Ford. Pursuant to the terms of the lease, which was entered into in Kentucky, Ford provided insurance through its business automobile coverage policy. With respect to the USF&G policy, then, it fairly can be said that Indiana does not have the most significant interest in the outcome of the interpretation of the contract at issue – Kentucky does.

*The Effect of the Travelers Policy on the Amount of UIM Coverage Available Under the USF&G Policy*

Given that Indiana law governs the interpretation of the Travelers policy, and that Kentucky law governs the interpretation of the USF&G policy, the court must now determine what effect, if any, the existence of UIM coverage theoretically available under the Travelers policy has on the amount of UIM coverage available under the USF&G policy.

Pursuant to the plain language of the Travelers policy, the limits of UIM coverage are $50,000 per person. The policy also contains a provision in the UIM endorsement, which states (in pertinent part):

> **OTHER INSURANCE**
> If there is other applicable similar insurance available under more than one policy provision of coverage: ...
> 2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
> 3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

The USF&G policy, for its part, has stated UIM coverage limits of $100,000 for each person and $300,000 for each accident.[1] It too contains an "Other Insurance" provision, which states (in pertinent part):

> **5. Other Insurance**
> a. ... For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. ...
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

As is evident from the quoted language above, both policies contain two essentially identical UIM coverage provisions: (1) a provision that each policy provides only excess coverage for the accident in question, and (2) that each company will pay only its share of the loss.

Pursuant to Indiana law, which governs the interpretation of the Travelers policy, there is

---

[1] The plaintiff asserts that the limits of liability actually are greater. The court disagrees, for the reasons discussed more fully below.

-4-

a statutorily mandated set off for underlying liability limits. *See* Ind. Code 27-7-5-5(c). Since the driver's insurance paid Mr. Espinosa $100,000, and the limit of the Travelers policy's UIM coverage is $50,000, the amount that Mr. Espinosa could recover under the Travelers policy is reduced to zero.

Mr. Espinosa asserts that, because of the operation of the statutory set-off provision, the Travelers policy is not "applicable" insurance (to use the term included in the Travelers policy) and does not "cover on the same basis" as the USF&G policy. The court disagrees with this assertion. Both policies provide coverage on the same basis. They each provide excess insurance when an insured is injured in a vehicle he does not own. The Indiana statute that mandates a set-off only affects the amount of money recoverable, not whether the contractual benefits are theoretically available. Similarly, the fact that the statutorily mandated set-off eliminates any recovery under Travelers policy does not render it inapplicable. Were the UIM coverage contracted for greater than $100,000, the excess of the set-off amount would potentially be available to Mr. Espinosa, and he would without doubt be seeking to recover it.

Given that the Travelers UIM insurance is "applicable" and "covers on the same basis" as the USF&G UIM coverage, they are properly considered "mutually repugnant" and should be disregarded, with each insurer responsible for its pro rata share of the loss. *See, e.g., Ohio Casualty Ins. Co. v. State Farm Mut. Auto Ins. Co.,* 511 S.W.2d 671, 674 (Ky. 1974); *Calvert Fire Ins. Co. v. Stafford*, 437 S.W.2d 176, 179 (Ky. 1969). The next question thus becomes one of proportionality.

Each policy states that it will pay only its proportional share of all available limits. Mr. Espinosa asserts that the statutory set-off removes the Travelers UIM coverage from all available

limits, and that USF&G is therefore responsible for one hundred percent of the potential liability (up to its policy limits). The court disagrees. The Travelers insurance is applicable, and the proportionality provisions of each policy speak in terms of stated limits, not amounts actually recoverable. Consequently, the stated limit of the UIM coverage under the Travelers policy (*i.e.,* $50,000) must be included in the total of the stated UIM coverage limits of both policies when determining USF&G's proportional share.

*USF&G's Total Potential Liability*

If the court were to apply each policy's stated UIM coverage limits as specified on their declarations pages, the total of the stated limits would be $150,000 – $50,000 under the Travelers policy and $100,000 under the USF&G policy. USF&G's proportional share would therefore be two-thirds of any total jury award, up to $100,000. Plaintiff argues, however, that USF&G's total liability is much more.

According to Mr. Espinosa, the total amount of USF&G's potential liability is $3,000,000. This theory is premised on a self-funded retention endorsement to the USF&G policy, which establishes a self-funded retention amount of $3,000,000 per accident, with respect to the business policy issued to Ford Motor Company. Contrary to plaintiff's assertion, this endorsement does nothing more than establish, in effect, a deductible (for want of a more precise term) for Ford Motor Company. It does not increase the amount of UIM coverage available. That amount, as stated plainly and unambiguously on the declarations page is $100,000.

**III.**

This court finds that USF&G's motion for partial summary judgment should be granted, although not entirely for the reasons presented in the memorandum in support of the motion. Contrary to USF&G's assertion, Kentucky law does not govern the interpretation of both contracts of insurance. Indiana law is properly used to interpret the Travelers policy, and Kentucky law is the appropriate choice for interpreting the USF&G policy. Nevertheless, the appropriate result is that USF&G is potentially liable for only two-thirds of any jury award in this case, up to its policy limits of $100,000.

The court will enter a separate order consistent with this memorandum opinion.

DATE:

cc (via facsimile and U.S. mail):   counsel of record